[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO MODIFY CHILD SUPPORT (MOTION No. 117) AND MOTION FOR CONTEMPT (MOTION No. 115)
Pursuant to Connecticut General Statutes sections 46b-56 and 46b-86
(a)[1] and Connecticut Practice Book section 25-27,[2] the court heard evidence concerning the plaintiff's motion for contempt filed August 28, 2001 and the defendant's motion to modify child support dated January 28, 2002. These motions were heard on March 28, 2002.
A. Facts of the Case
On August 4, 1994, the trial court, Petroni, J., entered an order that the defendant pay $96.00 per week for support of his minor child William Alamo, Jr.[3] The trial court's judgment incorporated a written separation agreement wherein the plaintiff received sole legal and physical custody of the child. That judgment did not preclude modification.
In June, 1998, the defendant filed a motion to modify child support CT Page 7661 wherein he claimed that he no longer had "the higher paying job on which the order as based on. I also have another child to support." The defendant simultaneously filed a motion for contempt wherein he alleged that contrary to the 1994 agreement, the plaintiff had relocated to Florida with the minor child. On August 5, 1998, the date the motions were assigned for a hearing, there was no indication that the plaintiff had been served. Accordingly, the matter was continued until August 20, 1998.[4] Neither of the parties appeared on that date.
The next action in this file was the plaintiff's motion for contempt dated August 28, 2001. There she alleged that the defendant had not paid a significant portion of the court ordered child support. She alleged an arrearage in the amount of over $17,280.00.
At the time of the original judgment, the defendant had a net weekly salary of $397.00. The plaintiff had a net weekly salary of $175. At the time of the present hearing, the defendant's net weekly salary was $336, while the plaintiff's net salary had increased to $365.00. There has been approximately a 15% decrease in the defendant's income while the plaintiff's income has more than doubled.
 I. LEGAL ANALYSIS
A. Motion to Modify Alimony and Child Support
Connecticut General Statutes 46b-86 (a) provides in relevant part:
 . . . [A]ny final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony and child support are clear. There must be a substantial change in circumstances. The defendant, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances. CT Page 7662Richard v. Richard, 23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357,496 A.2d 129 (1985).
Much of the testimony concerned the defendant's earning capacity at the time of the proceeding. There has been a substantial decrease in his income while that of the plaintiff has doubled. There is no question that there has been a "substantial change of circumstances."
The only remaining question is whether there is a basis for deviation from the guidelines. Connecticut General Statutes section 46b-215a-3 (a) of the Regulations of Connecticut State Agencies[5] establishes both standard child support payment guidelines as well as general criteria for deviation.
 "Both the `substantial change of circumstances' and the `substantial deviation from child support guidelines' provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole. . . . Turner v. Turner, 219 Conn. 703, 718-19, 595 A.2d 297 (1991).
The issue is whether the fact that the defendant has two additional children warrants a deviation from the current guidelines. The court has considered the comparative financial positions of each of these parties. The court must also consider the best interests of this child. Given the relative economic condition of these litigants, reliance on the guidelines would not be inequitable.
The defendant's motion to modify support is granted as follows.
The present amount of child support shall be reduced from $96 per week to $89 per week.
B. Motion for Contempt CT Page 7663
Pursuant to Connecticut Practice Book Section 25-27, the plaintiff filed a motion for contempt. Citing provisions from the original agreement to establish the existence of court orders, the plaintiff has established that the defendant failed to pay court ordered child support in the amount of $17,280.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with' court orders. The burden of establishing a prima facie showing of contempt, in this case the willful disobedience of a court order, falls upon the plaintiff.
In the present action, the plaintiff has proven the existence of the two relevant factors, an order and the defendant's failure to comply strictly with the court order. Thus, the contemptor, this defendant, must establish that he was unable to comply with the court order. Eldridge v.Eldridgie, 244 Conn. 523, 710 A.2d 757 (1998). Recognizing the broad equitable powers of this court, ". . . a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellino v. Hightower, 13 Conn. App. 591,595-96, 538 A.2d 1065 (1988).
As is often true in these situations, the court is faced with a question of credibility. For the defendant to be found in contempt, the plaintiff must show that there has been noncompliance and such noncompliance was willful. See Meehan v. Meehan, 40 Conn. App. 107,669 A.2d 616 (1996). Where there are good faith efforts to comply with court orders, contempt is precluded. Here the court finds that the defendant made a good faith effort to comply with existing court orders, at least until the plaintiff improperly relocated to Florida.
The motion for contempt is denied.
Orders shall enter on these motions as herein noted.
DEWEY, J.